FOURNET, Justice.
 

 The plaintiffs, Jake, Albert, and Gordon Krauss, who by deed dated January 8, 1938, acquired from Louis Fry a half interest in the Argyle Plantation in Tensas' Parish, Louisiana, instituted this suit against Fry’s widow and heir to have the reservation made by the vendor in such deed construed to entitle them to a one-fourth interest in and to all of the oil, gas, or other minerals in or under the property. In the alternative, that should the reservation be found to be ambiguous, then that the intention of the parties be looked into from the evidence in the record; in the further alternative, that in the event the court should consider the reservation adverse to the contention of the plaintiffs, then that the deed be reformed to reflect the true intention of the
 
 *253
 
 parties. They also seek to have leases executed by the widow and the daughter of Fry, and the mesne conveyances thereof, canceled from the public records to the extent that they slander the title of the plaintiffs to this fourth mineral interest. They made the California Company, the present holder of such leases, a party to this suit.
 

 Mrs. Fry and her daughter, Mrs. Marjorie Fry Davis, filed an answer admitting the sale and execution of the leases but denying the deed contained any ambiguity or that the plaintiffs acquired any mineral interest whatsoever in the property. They also filed a plea of estoppel. Their lessee and codefendant filed an answer pleading substantially that since it held mineral leases from both the plaintiffs and the Frys covering the land in question it had no interest in the outcome of the litigation other than to have its rights against either party recognized in accordance with the judgment of the court, and it prayed accordingly.
 

 Mrs. Fry and her daughter are appealing from a judgment in favor of the plaintiffs, recognizing their claim to the ownership of a fourth of the mineral rights and ordering the cancellation of the leases executed by Mrs. Fry and her daughter and the subsequent assignment thereof in so far as the same conflict with and infringe upon the fourth interest in the mineral rights owned by the plaintiffs, and also recognizing the leases from the plaintiffs and from Mrs. Fry and her daughter to the California Company to be in full force and effect.
 

 The case was tried on an agreed statement of facts which reflects that by authentic deed dated January 8, 1938, the plaintiffs acquired from Louis Fry (since deceased, his wife and daughter having been sent into possession of all of' his property in this state by judgment dated September 7, 1940), who was an equal co-owner in indivisión with Henry M. Marks of the Argyle Plantation in Tensas Parish, Louisiana, his undivided interest in the said property, in which deed is contained the following stipulation: “It is understood and agreed by and between the vendor and vendees herein that the said vendor does hereby reserve one-half (%) of all the oil, gas and other mineral rights in, under and that may be produced from the above described lands.” . . ,
 

 It is admitted that if Thos. M. Wade, Jr., were to be allowed to testify over the objection of the defendants, he would state he prepared the deed as attorney representing both the vendor and the vendees and that it was the intention of the vendor to sell and of the vendees to acquire half of the mineral rights under the half interest in the land being sold, thus leaving Fry and the Krausses together with an equal (or undivided one-fourth each) interest in and to all of the minerals under the whole plantation, and that the deed as drawn was intended to reflect such intention; further, that if Gordon and Jake Krauss, Henry M. Marks, and Josie Fultz Aly, who were present when the deed was prepared and executed, were permitted they would testify to this same effect
 

 
 *255
 
 Except as specifically provided otherwise in Article 2275 of the Revised Civil Code, “Every transfer of immovable property must be in writing * * *.” In the absence of fraud or error, parol evidence is inadmissible, as a general rule, against or beyond what is mentioned in a written act or as to what may have been said before, or at the time of making it, or since. Article 2276. See, also, Article 2236; Maignan v. Gleises, 4 La. 1; Badon v. Badon, 4 La. 166; Gautier v. Briault, 4 La.Ann. 487; Locascio v. First State Bank & Trust Co., 168 La. 723, 123 So. 304; Franton v. Rusca, 187 La. 578, 175 So. 66; Unity Industrial Life Ins. Co. v. Dejoie, 202 La. 249, 11 So.2d 546. But “The seller is bound to explain himself clearly respecting the extent of his obligations : any obscure or ambiguous clause is construed against him”, Article 2474, in which case extrinsic evidence may be resorted to in aid of arriving at the true intention of the parties. Holloway Gravel Company, Inc., v. McKowen et al., 200 La. 917, 9 So.2d 228. And, as pointed out in Reynaud v. Bullock, 195 La. 86, 196 So. 29, 34, on rehearing, “It is an established rule of law in our jurisprudence that ‘Either party is always permitted, in a suit between the parties to a contract, to correct any error in the instrument purporting to evidence the contract, so as to make it express truly and correctly the intention of the parties.”
 

 The first question for our consideration, therefore, is whether the vendor by including the provision in controversy intended to reserve unto himself a half of all of the oil, gas, and other mineral rights in and to the entire property or only to that portion of his interest therein being conveyed.
 

 Since the clause in controversy is separated from the description of the property by the conveying and consideration clauses, and there is no other clause in the contract itself to aid us in arriving at the true intention of the vendor, this controversial clause is, to say the least, susceptible of either construction. When considered with the uncontroverted facts in the agreed statement of facts on which this case was tried, however, which are admissible under the above rules of law, we must conclude, as did the trial judge, that the vendor only intended to reserve unto himself a half of the mineral rights in and affecting the property he was conveying, that is, an undivided half of a half, or a one-fourth interest in the whole.
 

 The plea of estoppel filed by the defendants Mrs. Fry and her daughter, being based on the fact that third parties dealt with them for the leasing of their oil and mineral rights (these now being held by the California Company) on the basis of their ownership of a half of these minerals, is untenable. To hold otherwise would be to allow these defendants by their own acts to perfect a title that was not in them. Certainly these acts of the defendants cannot be attributed to the plaintiffs and cannot, therefore, have the effect of estopping the plaintiffs from asserting their rights.
 

 Without detailing the contents of the several leases executed by the plaintiffs and the widow and daughter of Fry affecting
 
 *257
 
 the property in controversy, suffice it' to say that the California Company now holds leases covering the entire mineral rights to Argyle Plantation and that neither the plaintiffs nor the Frys are assailing the judgment of the lower court recognizing these rights.
 

 For the reasons assigned the judgment appealed from is affirmed, at the cost of the appellants.