JOHNSON, Judge.
This appeal is from a judgment of the trial court sustaining an exception of no cause of action and dismissing plaintiffs’ suit at their cost. Plaintiffs, Earl H. Fa-yard and Albert J. Taft, signed an agreement with one Henry A. McCall, Jr., defendant herein, wherein the plaintiffs were given the right to purchase immovable property from McCall.
The facts are not in dispute herein. The two plaintiffs were interested in buying this riverfront property known as Parcel K on Monkey Island. It is located on the west *993 bank of the Calcasieu River in Cameron Parish, Louisiana, near the Gulf of Mexico. Plaintiffs were fishermen and were interested in buying the property so that they could tie up their fishing boats on this riverfront property and live on the property adjacent thereto. The property was owned by a New York Corporation. The plaintiffs, through .their attorney, negotiated with the owners and had progressed to the extent that they sent a deposit on the purchase of the property. The parcel of property consisted of approximately five acres. The price was $29,750.00. The plaintiffs sent to the owners in New York, in February of 1976, a check in the amount of $2975.00 representing ten percent of the purchase price.
In the meantime, defendant McCall was interested in buying some 500 acres of property owned by this same corporation in this same general area. Parcel K, at issue herein, was a portion of the 500 acres that McCall wanted to buy. Thus, McCall and the plaintiffs both wanted to buy Parcel K. McCall and the two plaintiffs had a meeting in the office of the attorney for the plaintiffs on March 11,1976. At that meeting, the evidence shows, it was agreed that since both were desirous of buying the property, the owners of the property were going up on the price all the time. The potential vendees were bidding against each other. In their discussions on March 11, 1976, it developed that McCall was primarily interested in buying that portion of Parcel K that was under lease to Phillips Petroleum Company. This consisted of approximately two acres of the property. The oil company had docks on this property. McCall wanted this portion of the property and the oil company docks. Fayard and Taft were interested in the balance of the property, some three acres more or less. It was agreed at the meeting that Fayard and Taft would request that their deposit money be returned to them from New York. It was further agreed that McCall would be allowed to buy the property from the owners and sell to Fayard and Taft the portion they wanted.
An option or agreement was thereupon drawn up between the parties wherein McCall gave the plaintiffs the option or privilege of buying from him all of the property in Parcel K except that portion under lease to Phillips Petroleum. The agreement delineated with great particularity in a detailed legal description both the total of the property contained in Parcel K, and in a different description, that portion in Parcel K under lease to the Phillips Petroleum Company. The agreement spelled out in detail how the price of the property to be acquired by the plaintiffs was to be calculated.[1] The agreement is in evidence in the record and is designated “P-1” (Tr-18). The option was contingent upon McCall’s acquisition of the property. The plaintiffs deposited $500.00 cash to McCall at the time the agreement was signed.
The anticipated cost of all the property that McCall wished to buy was $185,250.00. Subsequently, it developed that McCall was required, in order to purchase all of the property, to pay the sum of $215,000.00. This represented an increase over what the parties had in mind at the time the option was signed. The option provided that the price of each parcel, in the event of an increase, would be increased pro rata in accordance with the percentage of the increase.
The plaintiffs deposited the $500.00. According to the agreement, if they did not go through with the purchase of the property, they would lose the $500.00 as liquidated damages. The agreement also provided that, if they did exercise their rights under the option, their $500.00 would be applied against the purchase price. The agreement further provided that Fayard and Taft could demand specific performance. It gave them thirty days after the acquisition *994 by McCall in which to exercise their rights under the option.
The deed to McCall of all the parcels of property (including Parcel K) was recorded on August 16, 1976. On September 13, 1976, Fayard and Taft, along with their attorney, went to McCall’s office with a survey by a consulting engineer. This survey showed the whole of Parcel K, including and delineating that portion under lease to Phillips Petroleum. It appears in the record as Exhibit “P-12”. See map attached as addendum 1.
The option agreement provided that the purchasers, Fayard and Taft would pay the cost of the appraisal and of the map. The testimony of Fayard and Taft is that McCall had stated at the time of the agreement that he wanted a Mr. Pease to make the appraisal. They hired Mr. Pease to do so. This is apparently not disputed. Mr. Pease calculated the value of that portion of Parcel K that Fayard and Taft wanted at a value of $16,500.00. Since the $500.00 was to be part of the purchase price, Fa-yard and Taft and their attorney took with them to McCall’s office a check in the amount of $16,000.00 representing the balance of the purchase price. The agreement provided that if the appraisal was not acceptable to either party then a second appraiser would be employed to work with the first appraiser to establish a value. It provided that their joint appraisal would be the purchase price. The cost of the second appraiser was to be borne equally by the purchasers and the seller.
As stated, on September 13th (within the 30 day period), the potential purchasers went to the office of the defendant, McCall, with the amount of the purchase price, the $16,000.00 check. This, with the $500.00 advance deposit represented the appraised price. They tendered the purchase price along with the appraisal and the map.
McCall refused to go through with the agreement. He advised the prospective purchasers that he was not going to honor the agreement unless he was forced to do so. McCall did not express any dissatisfaction with the appraisal. He did not express dissatisfaction with anything that the prospective purchasers had done. He did express dissatisfaction with the results of the survey in that it showed that there was a narrow strip of property which ran behind and to the west of the Phillips Petroleum lease. McCall’s only reply was that he was not going to go through with the agreement unless forced to do so.
The plaintiffs and their attorney left. The following day, September 14, 1976, plaintiff’s attorney wrote a letter to McCall. It notified McCall that the plaintiffs had exercised their option and wished to purchase the property. The trial judge held that the letter written the following day by the attorney, which was not approved or signed by the prospective purchasers, was not an acceptance of the option. The trial judge reasoned that since there was no power of attorney by the plaintiffs to their attorney, and since there was no written authorization by the plaintiffs authorizing the attorney to accept the option on their behalf, that the letter was not a proper acceptance. He cited Paul Voisin Corporation v. Torrey, 271 So.2d 624 (La.App. 4th Cir. 1973). With this we agree.
Some three days before trial of this matter, the defendant filed an exception of no cause of action. The trial judge did not rule on this exception until after the trial on the merits. After hearing the evidence in the case, the trial judge sustained the exception of no cause of action. There is a division of opinion in the Third Circuit Court of Appeal as to whether or not evidence entered without objections may be considered in passing upon an exception of no cause of action. See American Creosote Company v. Springer, 257 La. 116, 241 So.2d 510 (1970); Parks v. Winnfield Life Insurance Company, 336 So.2d 1021 (La.App. 3rd Cir. 1976); and Mire v. Fidelity & Cas. Co. *995 of New York, 338 So.2d 351 (La.App. 3rd Cir. 1976). A situation somewhat similar to the instant ease was presented to the 4th Circuit in Parr v. D. H. Holmes Co., Ltd., 311 So.2d 463. In the cited case, at the close of his case, plaintiff filed an exception of no cause of action. The exception was referred to the merits, and after all of the evidence was in, the trial court sustained the exception. On Appeal, appellants specified as error the action of the trial judge. The appellate court, while recognizing error on the part of the trial judge, resolved the matter as follows:
“While it is true that no evidence may be introduced to support or controvert an exception of no cause of action, it is also true that C.C.P. Article 2164 allows this court to render any judgment which is just upon the face of the record. . . ”
The appellate court then proceeded to consider the matter on its merits (as we are doing) and, reaching the same conclusion as did the trial court, ends its opinion as follows:
“The judgment of the lower- court dismissed plaintiffs’ suit on the exception of no cause of action; we amend this judgment to dismiss plaintiffs’ suit on the merits .
We proceed herein in accordance with the American Creosote case, supra, a Louisiana Supreme Court case, and with the Parr case, supra, a Fourth Circuit case, and in accordance with LSA-C.C.P. article 2164. Also see Smith v. Bickley, 348 So.2d 757 (La.App. 1st Cir. 1977).
As stated, we disagree with the result reached by the trial court. We reverse. We hold that under the circumstances here, and in accordance with the agreement in the record, that the delivery by the plaintiffs of the survey, of the appraisal made by the appraiser, Mr. Pease, and the tender of the purchase price in accordance with the appraisal, constitute a proper acceptance of the option.
Defendant complains herein of the form of the option agreement which admittedly was drawn up by plaintiffs’ attorney. The evidence reveals that the defendant is a businessman with some experience in such matters. Here he purchased some 500 acres of land for $215,000.00. The evidence shows that each of the parties herein had a good and valid reason for wishing tó enter into this agreement. They were each desirous of obtaining a portion of Parcel K. There was no conflict in their desires at that time. They each stood to gain by entering into such a contract.
The contract was negotiated and drawn up in the presence of the parties and under their direction. Fayard and Taft, as a result of the agreement, withdrew their deposit money from the corporation in New York. The evidence shows that they called New York on that date for this purpose. It is not clear whether the company in New York had definitely agreed to accept their deposit. Nevertheless, they, following the agreement with McCall, phoned and had their money returned. McCall wanted only the property under lease to Phillips Petroleum and the docks that went with it. Fa-yard and Taft wanted only the remainder of the property.
The defendant complains because the contract gives Fayard and Taft the right to specific performance and/or the right to withdraw allowing the $500.00 as liquidated damages. It also gives plaintiffs the right to have the $500.00 (in the event of acceptance) as a portion of the purchase price.
This Court knows of no impediment preventing knowledgeable parties contracting as was done here. This contract is not contra bonos mores. The parties had perfectly legitimate purposes in this matter. They each had advantages they were to get from the contract. Our Louisiana Supreme Court, in Lieter Minerals, Inc. v. California Company, 241 La. 915, 132 So.2d 845 (1961) cites the law relative to the freedom of parties to make any contract that is not unlawful or not contra bonos mores. In *996 said case the Supreme Court uses the following language, 132 So.2d on page 853.
“[16,17] Parties to a contract are free to stipulate as they please so long as their stipulations are not contrary to good morals or public policy or do not violate some law. La.Civ.Code Arts. 1764, 1895, 1901: . ” (Citing numerous cases)
Also see, Krison v. Texas Industries, Inc., 253 So.2d 614 (La.App. 2nd Cir. 1971). The agreement in question is clearly not a promise of sale with the giving of earnest money as contended by defendant. See Ducuy v. Falgoust, 228 La. 533, 83 So.2d 118 (1955).
The option agreement is subject to a potestative condition as defined in LSA-C.C. art. 2024:
“The potestative condition is that which makes the execution of the agreement depend on an event which it is in the power of the one or the other of the contracting parties to bring about or to hinder.”
McCall’s fulfillment of the option agreement was dependent on his purchase of the land, which was entirely within his power to do or not do. McCall was not bound by the option agreement to buy the property although he did bind himself to sell part to Fayard and Taft if he bought it. He was thus a conditional obligor. McCall suffered no penalty under the agreement if he failed to buy the tract, the purchase of which was a suspensive condition. Here, in contrast to Bussey v. Wise-Miller, 172 La. 198, 133 So. 433 (1931), McCall was not bound to buy the property or pay damages and there is a simple potestative condition.
LSA-C.C. art. 2034 states:
“Every obligation is null, that has been contracted, on a potestative condition, on the part of him who binds himself.”
However, LSA-C.C. art. 2035 provides:
“The last preceding article is limited to potestative conditions, which make the obligation depend solely on the exercise of the obligor’s will; but if the condition be, that the obligor shall do or not do a certain act, although the doing or not doing of the act depends on the will of the obligor, yet the obligation depending on such condition, is not void.”
Under LSA-C.C. art. 2035, even though the option agreement was subject to a potestative condition, the obligation depending on that condition is not void. See discussion at 47 Tulane Law Review 284. When McCall purchased the tract from Seacoast, the option agreement became a valid and enforceable one. Board of Com’rs, Etc. v. Concordia Abstract & R. Co., 181 La. 373, 159 So. 588 (1935). McCall, upon purchasing the land, elected to be bound by his prior agreement.
Agreements to sell immovable property are governed by LSA-C.C. art. 2462:
“A promise to sell, when there exists a reciprocal consent of both parties as to the thing, the price and terms, and which, if it relates to immovables, is in writing, so far amounts to a sale, as to give either party the right to enforce specific performance of same.
One may purchase the right, or option to accept or reject, within a stipulated time, an offer or promise to sell, after the purchase of such option, for any consideration therein stipulated, such offer, or promise can not be withdrawn before the time agreed upon; and should it be accepted within the time stipulated, the contract or agreement to sell, evidenced by such promise and acceptance, may be specifically enforced by either party.”
We hold that the plaintiffs, by their action in delivering the purchase price, the map, and the appraisal report, have validly accepted, in accordance with law, the option agreement.
Our Appellate Courts in a number of instances have approved different methods of acceptance of options. See
Hammond Asphalt Co., Inc. v. L. B. Ponder, Jr. et al., 303 So.2d 851 (La.App. 1st Cir. 1974);
*997 Book, etc. v. Krushevski, 266 So.2d 496 (La.App. 4th Cir. 1972);
Succession of Jenkins, 91 So.2d 416 (La. 2nd Cir. 1956);
Neblett v. Placid Oil Co., 257 So.2d 167 (La.App. 3rd Cir. 1972);
Choctaw Home Builders, Inc. v. Lena, Inc., 246 So.2d 212 (La.App. 1st Cir. 1971); Richmond v. Krushevski, 243 La. 777, 147 So.2d 212 (1962);
Lambert v. Succession of DeHass, 271 So.2d 910 (La.App. 1st Cir. 1972);
Murphy et al. v. Hussey, 117 La. 390, 41 So. 692 (1906);
Price v. Town of Ruston, 171 La. 985, 132 So. 653 (1931);
Price v. Town of Ruston, 19 La.App. 356, 139 So. 55 (1932).
The defendant argues before the Court, both in brief and orally, that in the event there is a reversal and the plaintiffs are given the right to specific performance, in that event, that defendant’s right to question the acceptance of the first appraisal, as set out in the option agreement, should be reserved to him in any judgment granted herein. We hold that the defendant’s unwarranted and adamant refusal to comply with the agreement, after acceptance by the plaintiffs, constitutes a waiver by him of such rights. Defendant has waived and forfeited any rights in that regard. Reasonable time limits have expired.
Perrin v. Hellback, 296 So.2d 342 (La. App. 3rd Cir. 1974);
Owens v. Robinson, 329 So.2d 766 (La. App. 2nd Cir. 1976);
Chartres Corp. v. Charles Carter & Co., 346 So.2d 796 (La.App. 1st Cir. 1971).
For the foregoing reasons, the judgment of the trial court herein is reversed and the following decree is ordered.
DECREE
IT IS ORDERED, ADJUDGED, AND DECREED that Henry A. McCall, Jr., is to comply with the terms of the March 11, 1976 option and convey by notarial instrument that portion of Parcel K described therein, not under lease to Phillips Petroleum Company, to Earl Fayard and Albert Taft under the terms of the option. This is to be for the sum of $16,500.00 cash, total price. The property is to be conveyed in accordance with the map by Lonnie G. Harper, consulting engineer, in evidence as “P-12” herein. Henry A. McCall, Jr., is to perform herein in accordance with this decree within thirty days from such time as this judgment becomes final.
If the said Henry A. McCall, Jr., does not perform in accordance with this decree within thirty days from the time that the judgment herein becomes final, then the plaintiffs, Earl H. Fayard and Albert J. Taft, are granted an additional period of thirty days, from the period of time allotted to McCall, within which they shall deposit in the registry of the Fourteenth Judicial Court, in and for the Parish of Cameron, to the credit of Henry A. McCall, Jr., the sum of $16,500.00. They are to deliver to the Clerk of said Court for recordation a copy of the map made herein, a certified copy of the option agreement herein, together with a certified copy of this judgment, which deposit, and which recordation in the conveyance records of Cameron Parish, Louisiana, shall constitute a conveyance of the property herein involved in accordance with said option agreement.
All costs of court at trial and on appeal are assessed to defendant, Henry A. McCall, Jr.
REVERSED AND RENDERED. .
Appendix to follow.
*998 APPENDIX
Addendum 1
[[Image here]]
*999 “This option is contingent upon McCall’s acquisition of the lands the title of which, must be approved by McCall’s attorney.
The price of the sale will be computed as follows:
1. Take the percent of increase which McCall will pay to Hanson Properties for the total lands to be purchased from Hanson (being parcels H, I, J and K as per letter from William Bolger, dated February 18,1976), over the then listing of $185,250.00.
2. Apply the percentage figure to the original list price of Parcel K of $29,750.00 for an increased value of the whole of Parcel K.
3. An independent appraiser will be employed to compute the relative value of the portion of Parcel K sold to Fayard and Taft as it bears upon the whole value of Parcel K as determined in step “2” above.
4. His decision of the value will be the sale price. If the decision of the appraiser is unacceptable to either party, then a second appraiser will be employed to work in conjunction with the first appraiser to establish a value and their joint decision will be final.”

. See appendix.